23981. ATLANTIC COAST LINE RAILROAD CO. *v.* McDONALD, admx.

STEPHENS, J. 1. Where upon the trial of a suit in which the plaintiff as administratrix of her husband's estate is suing to recover under the Federal employer's liability act for damages arising out of his homicide, alleged to have been caused by the negligence of the defendant railroad company, by the operation of one of its trains, a charge of the court that if the homicide was caused by both the negligence of the deceased and that of the defendant, the amount of damages recoverable would be reduced or apportioned according to the rule applicable in such cases, is not error in that the court did not, as a part of said charge, or elsewhere, charge that the plaintiff could not recover if the negligence of the deceased was the proximate cause of the injury, or that the court failed to instruct the jury as to the duty resting upon the deceased to avoid the consequences of the defendant's negligence, where the court expressly elsewhere in the charge instructed the jury that if the plaintiff recovered, the evidence must show to the satisfaction of the jury that the direct and proximate cause of the homicide of the deceased was the negligence of the defendant, through its agents, as alleged in the petition, and also charged that before the plaintiff could recover it must appear that the deceased could not have avoided the consequences of the alleged negligence of the defendant, and that a "duty is imposed by law on all persons to exercise ordinary care to avoid the consequences of another's negligence: but that duty does not arise until the negligence of such other is existing or is either apparent or the circumstances are such that an ordinary prudent person would have reason to apprehend its existence."

2. Where the court expressly charged the jury at least twice in different portions of the charge, and nowhere charged to the contrary, that if the

plaintiff recovers she must do so upon proof of negligence of the defendant as alleged in the petition, and that such negligence was the direct and proximate cause of the homicide of the deceased, and that in order for the plaintiff to recover it must appear that the deceased was killed in the manner and by reason of the acts of negligence alleged in the petition, an excerpt from the charge of the court in which the jury was instructed that if they should find that the homicide of the deceased was caused wholly and solely by negligence of the defendant, its agents or employees, the plaintiff would under certain conditions be entitled to recover, is not error as being an instruction to the jury that the plaintiff could recover upon any negligence of the defendant, regardless of whether such negligence was charged in the petition.

3. Where the court instructed the jury in the manner and method of using the annuity and mortality tables introduced in evidence, and instructed them that they were not bound to use the tables at all, but that the jury might consider them in their endeavor to ascertain the truth of the case, it was not error for the court to also instruct the jury, in the same connection, that the jury were at liberty to use the tables in any way the jury might "see fit," upon the ground that in instructing the jury that they could use the tables as the jury saw fit was an instruction that in using the tables they could use them for some other purpose than in ascertaining the life-expectancy of the deceased. This excerpt from the charge, when taken in connection with other portions of the charge, meant only that the jury could use the tables or not as the jury saw fit, in determining the life-expectancy of the deceased.

4. A charge wherein the court instructed the jury that the mortality tables in evidence could be used for the purpose of ascertaining the expectancy in life of the deceased, and in determining the amount that the plaintiff would be entitled to recover, and that if the jury should find that the expectancy of the deceased was either greater or less than the number of years indicated by the tables, this fact should be taken in consideration, and the amount of the plaintiff's recovery, should she be entitled to recover, would be the increase or decrease according to the evidence, "under the rules given you in charge," while it was an instruction that the life-expectancy of the deceased should be considered by the jury in determining the amount which the plaintiff would be entitled to recover, was not an instruction that other considerations, such as the life-expectancy of the plaintiff, should not be considered in arriving at the amount which the plaintiff would be entitled to recover. These excerpts from the charge therefore are not error in that the court failed therein, or elsewhere in the charge, to instruct the jury that they should ascertain the life-expectancy of the plaintiff, and that the plaintiff could recover only an amount representing her pecuniary loss during her life-expectancy, where her life-expectancy was less than that of the deceased.

5. There not appearing from the record as here presented any evidence as to the age of the plaintiff, or any other evidence from which the length of the period of her life-expectancy could be inferred, or that it would be less than the expectancy of her deceased husband, and although the jury might from her appearance, as she was present in court and appeared before them, draw a conclusion as to her age, and therefore as

to her life-expectancy, the record before this court is nevertheless silent as to there being any evidence from which the jury could infer that the plaintiff's life-expectancy was less than that of the husband. The failure of the court to charge that the jury should find the life-expectancy of the plaintiff, and that the jury in arriving at the pecuniary loss to the widow as a result of the husband's homicide should determine what the husband would have made during their joint lives, and that if the plaintiff's expectancy was less than the husband's she could recover only for the period covered by her expectancy, does not appear to be error.

6. A judge is not disqualified to preside in a case upon the ground of relationship to one of the attorneys for the plaintiff within the degree of relationship that would disqualify the judge, unless the attorney related to him has an interest in the litigation. Where it appears from the evidence that the attorney for the plaintiff in a suit for personal injuries has not contracted with the plaintiff for compensation for his services in representing the plaintiff, that the attorney has always been the plaintiff's attorney and has always treated the plaintiff right and the plaintiff wants him to represent her in the case, that there is no contract by which he is to have a portion of the recovery, and there is no agreement with the attorney as to what his compensation will be, that the estate of the plaintiff's husband, in whose behalf the plaintiff is suing as administratrix, has no assets, and where, notwithstanding the inference might be demanded from such evidence that the attorney is entitled to compensation for his services, and that he will not be able to collect a fee unless there should be a recovery and a collection from the defendant, it appears that the attorney, while his compensation is contingent upon a recovery, has no interest in the litigation, and therefore the presiding judge, by virtue of relationship to the attorney, is not disqualified to preside in the case. *Young* v. *Harris*, 146 *Ga.* 333 (91 S. E. 37); *Roberts* v. *Roberts*, 115 *Ga.* 259 (41 S. E. 616, 90 Am. St. R. 108). The court did not err in refusing to declare himself disqualified to preside, on motion made by the defendant.

7. There being evidence to authorize the inference that the plaintiff's husband, while engaged in the performance of his duties in switching cars in the employ of the defendant in interstate commerce, was killed by coming in contact with standing box-cars on the main-line track of the defendant at a station while he was riding on the tender of an engine of the defendant which was being backed over the cross-over track leading to the main line upon which the standing box-cars were located, from a parallel track, that prior to the engine's backing into the cross-over track from the parallel track, it had headed into this parallel track from another track on the opposite side of the parallel track, and in so doing and in clearing the switch preparatory to backing along the parallel track, it proceeded beyond this switch more than 30 feet, and unnecessarily proceeded along the parallel track beyond the switch which connected the parallel track with the cross-over track to the main line, and in passing this latter switch disobeyed the order of the conductor, which was to run the engine only far enough to clear the first switch, that after the engine headed into the parallel track and had passed the first switch it was the duty of the plaintiff's husband to throw the switch

so that the engine in backing would proceed along the parallel track, and that he got upon the back of the tender and signalled the engineer to back, that, in response to this signal the engineer proceeded to back the engine and tender along the parallel track, but that the engine and tender, instead of proceeding along the parallel track as it was expected to do, proceeded on to the cross-over track leading to the main line and backed into the standing cars on the main line, thereby causing the death of the plaintiff's husband, who was on the tender, that the engineer, after heading into the parallel track preparatory to backing his engine along that track, was, after clearing the switch, negligent in operating his engine beyond the other switch, which led into the cross-over track, the two switches being 29-1/2 feet apart, and was also negligent in backing the engine without due care for the safety of employees, as required by a rule of the company which required engineers to "use special care in . . shifting cars, to avoid . . injuring trainmen," and was also negligent, after he had observed that the engine was by mistake backing into the cross-over track and would run into the standing cars on the main line, in not stopping the engine, which was running at about 5 or 6 miles per hour, and avoiding killing the plaintiff's husband, who was, when he was killed, about 70 or 90 feet beyond the switch, and that, even assuming (although it does not appear) that after the engineer had negligently operated the engine past both switches the plaintiff's husband may have opened the switch on the parallel track to the cross-over track, the homicide of the plaintiff's husband was proximately caused and contributed to by the negligence of the defendant through its engineer in the operation of its engine under the circumstances indicated, the verdict found for the plaintiff was authorized. No error appears.

8. The motion of the defendant, as plaintiff in error, to assess damages for delay in prosecuting the case to this court is denied.

*Judgment affirmed. Jenkins, P. J., and Sutton, J., concur.*

Decided February 28, 1935.

*H. H. Merry, Bennet & Branch,* for plaintiff in error.
*Hay & Gainey,* contra.